```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
LAURA ROMAN-MALONE,                  :
                                     :
                    Plaintiff,       :
                                     :
        - against -                  :
                                     :
                                     :
CITY OF NEW YORK, SGT. VEGA,         :
SGT. POLCI, SGT. PERAGINE,           :
SGT. CADET, LT. COLELLA, LT. SCALA,  :
CAPT. SIMONETTI, CAPT. CEDRIC        :
RAYMOND, in their individual and professional :
Capacities,                          :
                                     :
                    Defendants.      :
------------------------------------x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 25, 2013
```

11 Civ. 8560 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Laura Roman-Malone ("Plaintiff") brings this action against her former employer, the City of New York and various former supervisors and coworkers at the New York Police Department ("NYPD") alleging discrimination based on race, national origin, and gender, hostile work environment; and retaliation for engaging in protected activity. She alleges violations of 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, New York State Human Rights Law § 290, et seq. ("NYSHRL"), New York City Human Rights Law, Administrative Code § 8-101, et. seq. ("NYCHRL"), as well as the First Amendment, and due process and equal protection under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Defendants move for dismissal pursuant to Fed. R. Civ. P. Rule 12(b)(6). For the reasons discussed below, Defendants' motion is GRANTED and Plaintiff's claims are dismissed.

## BACKGROUND

Roman-Malone, a Hispanic and African American woman, is a former officer of the NYPD. After twenty years of service, Plaintiff retired on April 30, 2011. Plaintiff alleges that

1

throughout her tenure at the 72nd Precinct in Brooklyn, New York, beginning in 2002, her supervisors issued her numerous command disciplines, assigned her to a prison van detail on July 30, 2007, transferred to a foot post detail in September 2009, and scolded and otherwise upbraided her on the basis of her gender, national origin, and race.  Roman-Malone further asserts that such action was taken against her in retaliation for initiating a discrimination suit against the NYPD in 1999, filing an OEEO complaint against Captain Raymond, and making complaints against her supervisors.  The 1999 suit resulted in a monetary settlement in Roman-Malone's favor.  (Am. Compl. ¶ 25.)

Plaintiff identifies several examples of allegedly discriminatory and retaliatory conduct.  (1)  In 2008, Sergeant Polci issued Plaintiff a command discipline, purportedly in retaliation for her complaints that Sergeant Polci ordered prisoners to be transported in an unsafe manner.  (2)  On July 10, 2009, Sergeant Vega "approached Plaintiff and began to berate Plaintiff and pointed her finger in Plaintiff's face" in connection with transferring a call to Sergeant Vega.  (Id. ¶ 28.)  After Roman-Malone complained to Captain Raymond about Sergeant Vega's "unprofessional conduct," on August 4, 2009, Sergeant Vega listed her in the Department's Violation Log and backdated the entry to July 10, 2009.  (Id. ¶¶ 32, 31.)  Roman-Malone filed another complaint against Sergeant Vega, this time for backdating the violation.  (Id. ¶ 32.)  Roman-Malone attempted to file a complaint with the OEEO on August 7, 2009, but it was not accepted.  (Id. ¶ 35.)  (3)  On September 24, 2009, Lieutenant Scala "became irate and began to yell at Plaintiff" and later issued her a command discipline when she explained that she had directed two officers to chain several prisoners for transport.  (Id. ¶ 36.)  Roman-Malone was immediately placed on a foot post detail and reassigned to Squad C3.  Plaintiff asserts that the assignment was retaliatory, since foot post is "usually given to rookies, less senior officers and officers who have been

placed on some type of modification." (Id. ¶ 46.) On September 29, 2009, Plaintiff filed an OEEO complaint, after which the command discipline was dismissed. (Id. ¶ 49.) (4) Roman-Malone also alleges that she was disciplined more harshly than similarly situated officers. She compares herself, for example, to male Officer Mendez, who had not filed any complaints. In addition, Captain Simonetti removed Plaintiff from her tour after she was involved in a verbal altercation with a white female police officer. Both were issued command disciplines, but while Roman-Malone was placed on a prison van detail, the other officer was assigned to the detective squad. (5) Roman-Malone contends that Sergeant Cadet and Lieutenant Ortiz retaliated against her by informing her that she would not have a steady partner, did not deserve a steady partner, and warned her that she would get negative evaluations from her supervisors. (Id. ¶ 53.) They also told younger officers that she was a bad influence. Roman-Malone further claims that another officer overheard Lieutenant Colella and Sergeant Pergaine say that they would make the last few months of her employment miserable. (Id. ¶ 54.) (6) On January 7, 2011, approximately three months before she retired, Roman-Malone was issued fast-tracked command discipline "for failing to take proper police action." (Id. ¶ 56.) The command discipline was dismissed after her complaint to the deputy inspector.

## DISCUSSION

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007) (internal quotation marks omitted). The Court only "assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof." Lopez v. Jet Blue Airways, 662 F.3d 593, 596 (2d

Cir. 2011) (internal quotation marks omitted).  To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (citation omitted).

   I.   Title VII Claims Are Time-Barred

A Title VII action must be brought within 90 days of a claimant's or his counsel's receipt of a right-to-sue letter.  See 42 U.S.C. § 2000e-5(f)(1).  A document is presumed to be received three days after its mailing.  Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).  This presumption may be rebutted by "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail . . . ." Id. at 526.

Roman-Malone filed her complaint with the EEOC, which issued its right to sue letter on August 4, 2011.  To be timely, the action had to be filed within ninety days of Plaintiff or her counsel's receipt of the letter.  Both claim that they did not receive the EEOC's letter until August 25, 2011.  In a pre-motion letter to the Court, counsel contends that the three-day presumption does not apply to him because the letter was improperly addressed, which resulted in significantly delaying its receipt. (Mashhadian Dec. Ex. B.)  Assuming that these circumstances rebut the three-day presumption for Roman-Malone's counsel, they say nothing of Plaintiff's own receipt of the EEOC letter.  Plaintiff asserts that she received the letter, dated August 4, 2011, on August 25, 2011, but fails to explain the three-week delay or provide any admissible evidence from which one can infer that the notice was either not mailed when dated

or took longer than three days to reach her. Accordingly, the Court will apply the three-day presumption and assume that Roman-Malone received her letter on August 8, 2011.[1]

The ninety-day limitations period begins to run the earlier of the plaintiff's or counsel's receipt of the right-to-sue letter. See Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 38 (2d Cir. 2011) (per curiam) ("[T]he 90-day limitations period set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that a right-to-sue letter is first received *either* by the claimant or by counsel, *whichever is earlier*.") (emphasis added). Plaintiff's presumed receipt is earlier than her counsel's. Ninety days of August 8, 2011 was November 6, 2011. Since the action was not commenced until November 23, 2011, it was more than two weeks late. Accordingly, Roman-Malone's Title VII claims are time-barred and dismissed. (Dkt. No. 1.)[2]

II.   Statutes of Limitations for § 1981 and § 1983 Claims

The statute of limitations is three years for § 1983 claims and four years for § 1981 claims. See Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009) (§ 1983); Lawson v. Rochester City Sch. Dist., 446 Fed. Appx. 327, 328 (2d Cir. Oct. 28, 2011) (§ 1981). Since Plaintiff filed her complaint on November 23, 2011, any § 1983 claims can go back to November 23, 2008 and § 1981 claims to November 23, 2007. Any incidents prior to those dates are time-barred. The limitations periods exclude one incident—Plaintiff's assignment as a prison van operator on July 30, 2007. (Am. Compl. ¶ 27.)[3] The "continuing

---

[1] Since August 7, 2011 was a Sunday, the Court presumes receipt on Monday August 8, 2011. This difference is not material, however, because this action did not begin until November 23, 2011, more than two weeks late.

[2] Title VII applies to employers, and not to individual supervisors. Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 n.8 (2d Cir. 2006). Plaintiff's Title VII claims against the individual defendants are dismissed as well because there is no individual liability.

[3] Plaintiff asserts that Sgt. Polci wrongfully issued her a command discipline "on or about 2008" without specifying a precise date. (Am. Compl. ¶ 41.) This incident falls within the four-year limitations period for Plaintiff's § 1981 claim. For the purposes of analyzing the § 1983 claim, at the pleading stage, the Court will construe this ambiguity in Plaintiff's favor and assume that this act falls within the three-year period.

violations exception," which permits recovery for discriminatory acts that occur outside the limitations period, does not apply, because Roman-Malone's assignment as a prison van operator is a discrete rather than continuing act.  See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) (noting that a job transfer or discontinuance of a particular job assignment is a "discrete act" that cannot form the basis of a continuing violation claim).

    III.    Liability Under 1983 for Violations of the First Amendment and Procedural Due Process

Section 1983 permits action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  City of Monterey v. Del Monte Dunes, 526 U.S. 687, 749 n. 9 (1999).  Plaintiff tries to conceal the weaknesses of her claims, mainly the § 1983 claim, by concocting a blend of alleged violations of the First Amendment, and due process and equal protection under the Fourteenth Amendment, against multiple defendants.  (Am. Compl. ¶ 63.)  On closer inspection, however, these claims fail.

To state a claim for a violation of procedural due process, Plaintiff must allege that she was deprived a protected interest in liberty or property, without adequate notice or opportunity to be heard.  Stewart v. City of New York, 2012 U.S. Dist. LEXIS 96998, at *42 (S.D.N.Y July 10, 2012).  Roman-Malone fails to allege a loss of a protected property interest.  She asserts that her assignment to foot post diminished her ability to earn overtime (thereby affecting other benefits) (Am. Compl. ¶ 47), but overtime pay is not a constitutionally protected property interest.  See id. at *43.  Further, she has not pled inadequate process, i.e., an inadequate procedure for processing

grievances. Thus, Plaintiff cannot sustain a § 1983 claim on the basis of a denial of procedural due process.

To state a First Amendment retaliation claim as a public employee, a plaintiff must allege that "(1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection existed between the speech and the adverse employment action "so that it can be said that his speech was a motivating factor in the determination." Mandell v. Cnty of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003). The amended complaint fails at the first step of the analysis because Roman-Malone's complaint dealt only with her own grievances, and not matters of public import. Her complaints were "personal in nature and generally related to her own situation." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993). Accordingly, her § 1983 claim is dismissed to the extent that it relies on a First Amendment violation.[4]

IV.     Liability Under § 1981 and § 1983 for Discrimination and Retaliation

While Plaintiff's Title VII claims are dismissed as time-barred, discrimination and retaliation claims under § 1981 and § 1983 are analyzed under the Title VII burden-shifting framework.[5]

---

[4] Plaintiff appears to assert a § 1983 claim against the City and "individual defendants" both in their individual and official capacities, and fails to specify whether she is suing the City under § 1981. (Am. Compl. ¶¶ 1, 12-19, 60-65.) In any event, Roman-Malone has not adequately alleged a governmental policy or custom, specifically, that the City sanctioned or ordered the challenged acts or that there was a "widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (internal quotation marks omitted). Setting aside Plaintiff's conclusory assertion that the defendants "act[ed] under color of state and local law, custom and usage," she has pled no facts from which one can infer that the acts of which she complains were the result of a policy or custom, as opposed to isolated acts of its employees. (Am. Compl. ¶¶ 10, 63.) Accordingly, any § 1981 and § 1983 claims against the City and the individual defendants in their official capacities are dismissed. See Patterson v. Cnty of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) (§ 1981); Monnell v. Dep't of Soc. Servs., 436 U.S. 658, 692-94 (1987) (§ 1983).

[5] Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a). "This section . . . outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson, 375 F.3d at 224 (2d Cir. 2004). Discrimination and retaliation claims under § 1981 are treated co-extensively with their Title VII counterparts. Croswell v. Triborough Bridge & Tunnel

Plaintiff does not distinguish her § 1981 and § 1983 claims on the one hand and her Title VII claims on the other. Accordingly, the Court will treat them together, except that her gender-based allegations under § 1981 are dismissed, since "[a]ny claim of gender discrimination [is] plainly outside the scope of § 1981, which deals with discrimination on the basis of race or alienage." Walker v. N.Y. City Dep't of Corr., 2008 U.S. Dist. LEXIS 97109, at *31 (S.D.N.Y. Nov. 18, 2008) (quoting Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998)). Individual liability under both § 1983 and § 1981 are predicated on the personal involvement of each defendant. Patterson v. Cnty of Oneida, 375 F.3d 206, 229 (2d Cir. 2004). When analyzing Roman-Malone's claims, therefore, the Court considers the personal involvement of each defendant.

    a. Discrimination Claims

In McDonnell-Douglas Corp. v. Green, the Supreme Court set forth a burden-shifting framework that governs discrimination cases. 411 U.S. 792, 800 (1973). First, Plaintiff must present facts to establish a prima facie case that she suffered from an adverse employment action due to membership in a protected class. Then, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its action. Id. Once the employer has satisfied its burden of production, the burden shifts back to the plaintiff to show that the proffered explanation is pretextual. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

To establish a prima facie case of discrimination, a claimant must show: "(1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment

---

Auth., 2007 U.S. Dist. LEXIS 58343, at *24 n.17 (S.D.N.Y. Aug. 7, 2007) (citing Lizardo v. Denny's, Inc., 270 F.3d 94, 105 (2d Cir. 2001) (§ 1981 retaliation claim)); see Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (§ 1981 discrimination claim). A § 1983 claim that arises out of discrimination may be grounded in the Equal Protection Clause, and is analyzed under the Title VII framework. Annis v. Cnty of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). By contrast, claims of retaliation may not be actionable as equal protection claims under § 1983. Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1995).

action; (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

To survive a motion to dismiss, employment discrimination plaintiffs need not plead a prima facie case or satisfy the burden-shifting framework of McDonnell Douglas . . . ." Swierkiewicz v. Sorema NA., 534 U.S. 506, 507 (2002). Nevertheless, plaintiffs must plead enough facts to state a discrimination claim that is plausible on its face. See Hedges v. Town of Madison, 456 F. App'x 22, 23 (2d Cir. 2012). A claim is properly dismissed if a plaintiff has failed to plead facts that would create an inference of an adverse employment action based upon membership in a protected class. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).

### i. Lack of Race, National Origin and Gender Animus

As an initial matter, Plaintiff did not oppose Defendants' contention that Sergeant Peragine, Sergeant Cadet, Lieutenant Colla, and Captain Raymond were not personally involved in any of the allegedly discriminatory actions taken against her. Since she failed to respond to Defendants' argument, she has abandoned any discrimination claims against these individuals. See Lipton v. Cnty of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). Even if the Court were to examine these claims on the merits, they fail because Roman-Malone does not allege improper animus.

With respect to national origin, there are no indications that the any of the defendants took action against Roman-Malone because she or her ancestors are from Puerto Rico. Defendants never commented about this fact; in fact, there are no circumstances that would permit the inference that they even knew of her place of origin.

The amended complaint similarly fails to raise an inference that any of the defendants' actions were motivated by Roman-Malone's gender. The sole incident on which she relies

involved only Sergeant Vega.  Plaintiff alleges that Sergeant Vega berated her in public, and "never treated similarly situated male officers in such a demeaning manner." (Am. Compl. ¶ 28.)  By itself, this does not plausibly support an inference of discriminatory animus.  See Sanders v. Grenadier Realty, Inc., 367 Fed. Appx. 173, 175 (2d Cir. 2010) (noting that threadbare recitation that non-black residents were granted subsidies "stops short of the line between possibility and plausibility of entitlement to relief.").

With respect to racial discrimination, the complaint's only express reference to racial animus is that "under Defendant Captain Simonetti's direction and supervision plaintiff was issued a number of command disciplines and minor violations that were not given to similarly situated Caucasian officers." (Am. Compl. ¶ 40.)  The Amended Complaint fails to identify the other Caucasian employees or explain how they were similarly situated to Plaintiff.  Her conclusory assertion that the command disciplines were motivated by discriminatory intent will not do.

Plaintiff alludes to racial animus in her pleading that Captain Simonetti placed her on a punitive prisoner van detail after Plaintiff had a verbal altercation with a white female officer.  (Am. Compl. ¶ 39.)[6]  While Plaintiff was removed from her tour, the other unnamed officer was (at some unspecified time) assigned to the detective squad.  (Id.)  First, the amended complaint does not state that Captain Simonetti assigned the white officer to the detective squad or knew about the other's purportedly preferential treatment.  Roman-Malone does not mention that she applied for the detective squad or expressed interest in that position and was passed over.  Other than that Plaintiff was more "experienced," the complaint does not explain how or why the female white officer was similarly situated to her.  The promotion of a single white officer at

---

[6] Plaintiff does not provide a date for this assignment.  It is unclear if this is the same "prison van operator" assignment that Plaintiff was given on July 30, 2007 allegedly in retaliation for filing her lawsuit against the NYPD in July 1999. (Am. Compl. ¶¶ 25, 27.)  If so, it is time-barred under the various statutes of limitations.

10

some unspecified point subsequent to the incident does not raise the inference that Roman-Malone's assignment was racially motivated. Since Plaintiff has failed to plausibly allege racial animus, her discrimination claims are dismissed.

        ii.   Failure to Plead an Adverse Employment Action

Plaintiff has also failed to meet the standard for an adverse employment action. For an employer's actions to be an "adverse employment action," there must be a "materially adverse change in the terms and conditions of . . . employment . . . ." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

Roman-Malone identifies the following as adverse employment actions: (1) Sergeant Vega "berate[d] Plaintiff and pointed her finger in Plaintiff's face in the presence of other police officers in the area . . . and told Plaintiff to "grow up"; (2) Lieutenant Scala "became irate and began to yell at Plaintiff, in the presence of . . . two officers and three prisoners, for having placed chains on the prisoners that were being transported"; (3) Plaintiff was reassigned as a prison van operator; (4) Sergeant Polci placed Plaintiff on a foot post detail on September 25, 2009; and (5) Plaintiff was issued an unspecified number of command disciplines. (P. Opp. at 12-13, Am. Compl. ¶¶ 27, 28, 36, 37, 39-41, 44-46).

As for the first two challenged actions, being chastised in public is not an adverse employment action. Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at [and] receiving unfair criticism . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment."). Plaintiff's third challenged action of being reassigned as a prison van operator is time barred, and cannot be considered.

11

As to Plaintiff's fourth action of assignment to a foot post, strictly lateral transfers are not actionable if the new position is not inferior in terms of salary, work schedule or responsibilities. See Mishk v. Destefano, 5 F. Supp. 2d 194, 202 (S.D.N.Y. 1998). Plaintiff alleges that she was reassigned to Squad C3 on September 28, 2009, but does not provide any basis for comparison between her previous duties and her new ones in C3. (Am. Compl. ¶ 46.) Roman-Malone does not contend that she lost any salary or suffered any "materially significant disadvantage" with respect to her transfer to Squad C3. See Galabya, 202 F.3d at 641. She does contend, however, that for three whole days from "September 25, 2009 . . . [Plaintiff] was immediately placed on foot post by Sgt. Polci up until September 28, 2009." (Am. Compl. ¶ 46.) She continues that "[s]aid assignment to foot post severally reduced Plaintiff's ability to earn overtime and therefore materially affected her pension and other benefits during the last couple of years prior to retirement in 2011." (Id. ¶ 37.) It is far from clear how a three-day assignment could materially affect her pension and overtime throughout "the last couple years" of her employment. Without more, the Court cannot credit this assertion of a loss of privileges.

The command disciplines that Roman-Malone received do not amount to adverse employment action. See Jackson v. N.Y. Dep't of Labor, 709 F. Supp. 2d 218, 228 (S.D.N.Y. 2010) (noting that disciplinary notices alone do not are insufficient when they do not result in other action). Plaintiff does not allege that she suffered any subsequent employment consequences, such as assignment to another position, suspension, or loss of vacation days. Indeed, command disciplines are frequently attached as dogs without teeth. In fact, after she filed a complaint with OEEO, the plaintiff alleges that "the command discipline charges were dismissed." (Am. Compl. ¶ 50.) See Barounis v. New York City Police Dep't, 2012 U.S. Dist. LEXIS 176477, at *44-45 (S.D.N.Y. Dec. 12, 2012) (holding that being placed in the minor

12

violations log, being yelled at in front of co-workers, and being issued a command discipline do not amount to adverse employment action as such measures did not result in penalties, or a loss of benefits or time); Rothenberger v. New York City Police Dep't, 2008 U.S. Dist. LEXIS 113124, at *12 (E.D.N.Y. Mar. 27, 2008) (finding that plaintiff did not suffer adverse employment action from four command disciplines and a letter of re-instruction where plaintiff conceded that no action was taken or penalty imposed as a result); accord Anemone v. Metro Transp. Auth., 410 F. Supp. 2d 255 (S.D.N.Y. 2006).

      b.  Retaliation Claims

To establish a prima facie retaliation claim, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (quotation marks omitted).

"Protected activity" refers to action taken in opposition to statutorily prohibited discrimination or participation in any Title VII proceeding. Deravin v. Kerik, 335 F.3d 195, 204 (2d Cir. 2003); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3).[7] In the context of Title VII's anti-retaliatory provisions, "adverse employment action" applies broadly to encompass retaliatory acts that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 162 (2d Cir. 2010). This standard requires a lesser showing than "adverse

---

[7] 42 U.S.C. § 2000e-3(a) provides, in relevant part, that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . , because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

An "unlawful employment practice," in turn, is defined as an action by an employer that discriminates against any individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex or national origin. 42 U.S.C. § 2000-2(a)(1).

13

employment action" in the anti-discrimination context, and is not limited to actions that affect the terms and conditions of employment. Id. at 165.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

The Court need not consider whether the acts of which Roman-Malone complains are retaliatory adverse employment actions because Plaintiff failed to plausibly allege that she participated in protected activity that was causally related to any action taken against her.

There is no dispute that Roman-Malone has sufficiently pled that she engaged in protected activity by initiating a federal civil action against the NYPD in July 1999 for its alleged discrimination and retaliation and by filing an OEEO complaint against Captain Raymond when he was at the 75th Precinct for making derogatory comments to female police officers. (Am. Compl. ¶¶ 26, 35.) Nonetheless, these acts do not support a claim of retaliation because they are not plausibly connected to any adverse acts. The lawsuit in 1999, which occurred years prior to any of the acts of which Roman-Malone complains, is too temporally remote to suggest an improper motive. See Kirkweg v. N.Y.C. Dep't of Educ., 2013 U.S. Dist. LEXIS 55042, at *15 (S.D.N.Y. Apr. 4, 2013) ("When a plaintiff relies on temporal proximity to demonstrate causation, the proximity must be 'very close.'"). As for Plaintiff's complaint to OEEO concerning Captain Raymond, she does not provide a date for her complaint. Plaintiff does, however, allude to filing the OEEO complaint when they were both at the 75th Precinct; she transferred to the 72nd Precinct in 2002. (Am. Compl. ¶¶ 21, 26.) To the extent she complained

14

prior to 2002, as with Roman-Malone's 1999 lawsuit, this incident is too attenuated from any command discipline that Captain Raymond may have issued seven years later, on September 24, 2009, to support retaliatory intent.  The Amended Complaint does not suggest that Captain Raymond, D.I. Pintos, and Lieutenant Scala issued a command discipline for reasons other than their dissatisfaction with Roman-Malone's handling of the chaining of the prisoners.  (Am. Compl. ¶¶ 36, 37, 44, 45.)  Roman-Malone states that she complained "in the past" that Lieutenant Scala "verbally abused three female employees."  (Id. ¶ 42.)  Even assuming that she complained that the scolding was gender-related, she does not provide an approximate time frame for her complaint, and thus cannot rely on timing to support an inference of causation.

While Plaintiff alleges other complaints to her supervisors as examples of protected activities, she has failed to demonstrate that she complained about any statutorily-prohibited, unlawful discriminatory employment practice.  Cruz, 202 F.3d at 566; Clemente v. N.Y. State Div. of Parole, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010).  Plaintiff contends that Sergeant Vega reported her in the Violation Log on August 5, 2009 (backdated to July 10, 2009) in retaliation for complaining to a commanding officer about Sergeant Vega's unprofessional conduct.  (Am. Compl. ¶¶ 28-31.)  Such "unprofessional conduct" is not statutorily prohibited.  Even if Sergeant Vega's shouting at Plaintiff subjectively sounded in discrimination because Sergeant Vega "never treated similarly situated male officers in such a demeaning manner," the complaint fails to allege that she alerted the defendants to the fact that her complaints of "unprofessionalism" were based on discriminatory conduct.  See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (requiring as implicit in protected activity that employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by" anti-discrimination laws).  Roman-Malone also alleges that Sergeant

Polci issued her a command discipline for complaining to Inspector Pintos that Sergeant Polci ordered the transportation of prisoners in an "unsafe manner." (Am. Compl. ¶ 41.) Plaintiff may have complained about Sergeant Polci's failure to do his job, but not about discrimination. Plaintiff refers to other "complaints to supervisors" but does not discuss the subject of her grievances. (See id. ¶¶ 43, 45, 48, 49.) These vague allegations are insufficient to form the basis of a retaliation claim.

Plaintiff asserts that on August 7, 2009, she filed a complaint with the OEEO of the NYPD, which the OEEO refused to accept. (Am. Compl. ¶ 35.) As with her other allegations, Roman-Malone does not explain what she complained about. To the extent that her complaint related to Sergeant Vega's backdating of her entry in the Violation Log, the underlying conduct was not discriminatory. Because Roman-Malone has not demonstrated that she participated in protected activity that caused the acts of which she complains, her retaliation claims are dismissed.

V.      Hostile Work Environment Claims and Constructive Discharge

Individuals may be liable under § 1981 and § 1983 in their individual capacities for certain discriminatory acts that give rise to a hostile work environment. Patterson, 375 F.3d at 226. To establish a hostile work environment, a plaintiff must show that she was subjected to hostility because of her membership in a protected class. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 240 (2d Cir. 2007). As discussed above, Plaintiff has failed to raise a plausible inference that she was treated differently on account of her national origin, race, or gender.

Plaintiff contends that as a result of a hostile work environment, she was "forced to retire and constructively discharged from the NYPD in 2011." (Am. Compl. ¶ 24.) "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show

16

working conditions so intolerable that a reasonable person would have felt compelled to resign.'" Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010). "This standard is higher than the standard for establishing a hostile work environment." Id. Since Roman-Malone has failed to sufficiently plead that she was exposed to a hostile work environment, her constructive discharge claims fail as well.

VI.     State and New York City Claims

When "all federal-law claims are eliminated before trial, [a] balance of [judicial economy, convenience, fairness, and comity considerations] . . . will point towards declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon v. Cohill, 484 U.S. 343, 350 n.7 (1988). Since Plaintiff's federal claims (Title VII, § 1981, and § 1983) are dismissed, the Court declines to exercise jurisdiction over her NYSHRL and NYCHRL claims.

VII.    Leave to Amend

Leave to file an amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. Forman v. Davis, 371 U.S. 178, 182 (1962).

Roman-Malone has requested leave to amend the complaint.[8] The Court grants leave to replead her claims, except for the following three claims which are dismissed with prejudice: (1) Title VII claim because it is barred by Plaintiff's failure to initiate suit within the required 90 days of receiving her EEOC right-to-sue letter; (2) any allegations arising out of Plaintiff's "prison van operator" assignment on July 30, 2007 because they are time-barred under the

---

[8] Plaintiff referred the Court to a proposed amended complaint attached as "Exhibit C," which appears on ECF to be an unrelated document. (Dkt. No. 29.)

relevant statutes; (3) her gender-based allegations under § 1981 because they are not cognizable under that statute.

## CONCLUSION

Defendants' motion to dismiss is granted. The court grants leave to amend the complaint within THIRTY (30) DAYS of this Order. The Clerk of Court is directed to terminate the motion at docket number 24.

Dated: New York, New York
       July 25, 2013

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge